**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

ERIC ALLEN VICKERS, #310165,

        Petitioner,

v.                                                                                                          ACTION NO. 2:05cv147

DIRECTOR OF THE DEPARTMENT
OF CORRECTIONS,

        Respondent.

**UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter was initiated by petition for writ of habeas corpus under 28 U.S.C. §2254. The matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. The Court recommends denying Vickers's petition for writ of habeas corpus for the reasons stated below.

**I. STATEMENT OF THE CASE**

**A. Procedural Background**

Petitioner Eric Allen Vickers ("Vickers") was convicted in the Portsmouth Circuit Court of capital murder and was sentenced to a term of life imprisonment.

Vickers's direct appeal of his convictions to the Virginia Court of Appeals was denied on October 23, 2002. The Virginia Supreme Court refused Vickers's petition for appeal on June 12, 2003. Vickers then filed a habeas petition in the Virginia Supreme Court, which was denied on January 14, 2005.

Vickers, presently in the custody of the Virginia Department of Corrections at the Wallens Ridge State Prison in Big Stone Gap, Virginia, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on March 10, 2005. On May 9, 2005, respondent filed a Rule 5 Answer and Motion to Dismiss. Vickers filed a response to the Motion to Dismiss on November 10, 2005.

## B. Factual Background

The victim, a twenty-eight pound two-year-old boy, died as a result of acute chest and abdominal injuries caused by blunt force trauma. (Jan. 30, 2002 Tr. 131-132.) Assistant medical examiner for the Commonwealth of Virginia, Dr. Elizabeth Kinnison, testified that the victim had bruises to his arms, legs, chest, and back, as well as abrasions to his face, head, chest and back. (Id. 131- 138.) Dr. Kinnison testified that the victim's internal injuries included several broken ribs. (Id. 138-139.) Of those rib fractures, the ones on the right side of his body were displaced fractures, which occur when a bone is broken and actually displaced from its normal location. (Id. 138-140.) "[T]hese jagged ends of the bone punctured [one of the victim's] lung[s]," which caused bleeding in the lung and the ultimate collapse of the lung. (Jan. 30, 2002 Tr. 138-140.)

The blunt force trauma inflicted upon the victim also caused a massive laceration of the liver, "almost a fracture, of the liver almost in half"; a laceration of the mesentery, an extremely vascular portion of the colon; bruising on the right and left sides of the diaphragm; bleeding in the area of the kidney and adrenal glands; as well as bruising in other areas of the colon. (Jan. 30, 2002 Tr. 138 & 139.) Additionally, the pleura, "which is almost like a skin on the inside [of the chest cavity]," was torn. (Id. 141.) Dr. Kinnison stated that these fatal injuries were the result of "many more than just one blow." (Id. 144.) There was testimony that the victim had bruises and abrasions that pre-dated the victim's fatal injuries. (January 30, 2002 Tr. 142.) However, Dr. Kinnison testified that "[m]ost

of the bruises on the body appear to be recent. The internal injuries to the chest and abdomen are all recent, fresh." (Id.) Thus, there was no contention that the victim died as a result of a pre-existing injury.

The night before the victim was found dead, the victim's mother, Samantha Kapp ("Kapp"), went out for the evening with friends. (January 29, 2002 Tr. 212-213.) Vickers was taking care of the victim, the victim's four-year-old sister, and Elizabeth Rouse ("Rouse"), another child in the home, by himself. (Id. 217.) At trial, Rouse testified that Vickers "yelled at" the children to go to their rooms, and that he locked Rouse and the victim's sister in one bedroom while the victim went into another bedroom by himself. (Jan. 30, 2002 Tr. 44-46.) Rouse testified that she heard "banging and stomping" coming from the victim's room that sounded like someone was "pounding on the back door" or "hitting the floor" and that these noises were "real[ly] loud." (Id. 46-47.) Rouse testified that she heard the victim say "ouch" more than one time, and that Kapp returned home after Rouse heard the banging noises and after she heard the victim say "ouch." (Jan. 30, 2002 Tr. 48.) Rouse testified that after Kapp returned home, Rouse surreptitiously unlocked her bedroom door and attempted to wake Kapp in order to tell her to check on the victim, because Rouse was concerned for the safety of the victim. (Id. 49-50.) Rouse was unable to wake Kapp, and checked on the victim herself; she found the victim to be "all blue" and cold. (Id. 49-53.)

Kapp testified that she arrived home at approximately 2:30 a.m. and slept until 11:30 a.m. the next morning. (Jan. 29, 2002 Tr. 219 & 225.) Kapp testified that she asked Vickers to check on the victim, and that upon returning from the victim's room Vickers informed Kapp that the victim was asleep and that his foot moved. (Id. 230.) Kapp later entered the victim's room and found the deceased child. (Id. 231-233.) Carroll Ward, a paramedic who responded to the 911 call, testified

3

that rigor mortis had set in on the victim's body on "all four extremities" and that he was "cold." (Jan. 30, 2002 Tr. 82.) The medical examiner testified that it takes several hours for rigor mortis to set in after death. (Id. 146.) Based upon this information, the medical examiner determined that the victim had been dead for several hours before Kapp discovered his body.

Vickers testified at trial and accused Kapp of killing the victim. (Jan. 31, 2002 Tr. 17.) He also testified that he did not tell Kapp that the victim's foot moved. (Id. 25.)

### C. Grounds Alleged

Vickers asserts the following entitle him to relief under 28 U.S.C. § 2254:

(A) He was denied effective assistance of counsel due to his trial counsel's ineffective cross-examination of witnesses Samantha Kapp and Elizabeth Rouse;

(B) He was denied effective assistance of counsel because his trial counsel failed to subpoena several key witnesses to testify for the defense;

(C) He was denied effective assistance of counsel because his trial counsel failed to properly pursue a defense that Samantha Kapp was the actual perpetrator;

(D) He was denied Due Process due to the prosecutor's actions during the trial;

(E) He was denied effective assistance of counsel due to his attorney's failure to object to various incidents of prosecutorial misconduct;

(F) He was denied effective assistance of appellate counsel because his appellate counsel failed to raise issues on appeal regarding prosecutorial misconduct;

(G) He was denied Due Process due to the use of certain photographs during the guilt phase of the trial;

(H) He was denied effective assistance of counsel because his appellate counsel failed to raise on direct appeal the contention that the autopsy photographs were admitted in violation of his Due Process rights;

(I) The evidence was insufficient:
(1) to sustain a conviction; and,
(2) to prove the element of premeditation;

(J) He was denied the effective assistance of trial counsel due to trial counsel's failure to argue that the Commonwealth had failed to prove premeditation;

(K) He was denied the effective assistance of appellate counsel because his appellate counsel did not argue that the Commonwealth had failed to prove premeditation; and,

(L) He was denied that effective assistance of appellate counsel due to the fact that his appellate counsel failed to argue that the trial court abused its discretion in denying his motion to strike.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Exhaustion

In order for this Court to address the merits of this habeas petition, all of Vickers's claims must be exhausted. See 28 U.S.C. § 2254(b) (2000). The exhaustion requirement is satisfied when the "essential legal theories and factual allegations advanced in federal court . . . [are] the same as those advanced at least once to the highest state court." Pruett v. Thompson, 771 F. Supp. 1428, 1436 (E.D.Va. 1991), aff'd, 996 F.2d 1560 (4th Cir. 1993). Exhaustion may be accomplished either on direct appeal or in post-conviction proceedings. See O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999) (citing Brown v. Allen, 344 U.S. 443, 447 (1953)); see also Skipper v. French, 130 F.3d 603, 610 n.4 (4th Cir. 1997). Vickers's petition to the Virginia Supreme Court for a writ of

habeas corpus contained some of the same claims raised in the present petition; therefore, Vickers's Grounds A, B, C, E, F, K, and L meet the exhaustion requirement. Ground I (2) was raised on direct appeal to the Virginia Supreme Court. Therefore, Ground I (2) has also met the exhaustion requirement.

Grounds D, G, H, J and Ground I (1) were not raised before the Virginia Supreme Court. Vickers makes legal arguments similar to those made in his state habeas petition in several of these Grounds, however he supports the arguments with allegations different from those presented to the state court. As a result, these Grounds are not exhausted. Because the exhaustion requirement "refers only to remedies still available at the time of the federal petition," Engle v. Isaac, 456 U.S. 107, 125 n.28 (1982), Vickers can satisfy the requirement "if it is clear that [Vickers's] claims are now procedurally barred under [Virginia] law," Castille v. Peoples, 489 U.S. 346, 351 (1989). See also Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997).

Virginia does bar Vickers from raising Grounds D, G, H, J and I(1) on state habeas corpus now because he had knowledge of these claims at the time he filed his previous state habeas corpus petition and failed to raise the claims in that petition. See Va. Code Ann. § 8.01-654(B)(2) (2000). Therefore, Vickers has met the exhaustion requirement for the claims.

However, even if his claims meet the exhaustion requirement, under Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977), Vickers cannot raise in a federal habeas corpus proceeding any claim he did not first present to the Virginia Supreme Court unless he can show cause for failing to present the claim and prejudice resulting therefrom. Nowhere in his federal petition has Vickers shown the requisite cause and prejudice which this Court must find before considering the merits

of the claims. Therefore, this Court finds that Grounds D, G, H, J and I (1) are defaulted and will not address the merits of those Grounds.

**B. Merits**

Vickers previously asserted his Grounds A, B, C, E, F, I (2), K and L to the Virginia Supreme Court in his habeas petition filed January 14, 2005. Pursuant to Title 28 of U.S.C. §2254, a federal court may not grant relief on any claim that the Virginia Supreme Court adjudicated on the merits[1] unless the Virginia Supreme Court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as established by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The Supreme Court has explained that this statute "plainly sought to ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362 (2000). Consequently, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Id. at 1511.

---

[1] The Virginia Supreme Court does not have to set forth findings of fact and conclusions of law in its disposition of a claim for the claim to be "adjudicated on the merits." Wright v. Angelone, 151 F.3d 151, 156-57 (4th Cir.1998).

The Supreme Court has admonished,

> factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(c)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).

Miller-El v. Cockrell, 537 U.S. 322 (2003). The Virginia Supreme Court denied Vickers's direct appeal on the merits on June 12, 2003, and denied his habeas petition on the merits on January 14, 2005.

1. **Ineffective Assistance of Counsel Grounds**

Grounds A, B, C, and E, alleged above as entitling Vickers to relief, were previously asserted to the Virginia Supreme Court in Vickers's habeas petition filed on June 1, 2004. The Virginia Supreme Court denied Grounds A, B, C, and E based on the merits and the holding in Strickland v. Washington, 466 U.S. 668 (1984), on January 14, 2005. Accordingly, these claims have been exhausted and are ripe for federal review.

The controlling standard for ineffective assistance of counsel claims is found in Strickland v. Washington, 466 U.S. 668 (1984). In order to recommend granting Vickers's relief on his ineffective assistance of counsel claims, this Court must find that the Virginia Supreme Court's dismissal of Vickers's claims was an unreasonable application of Strickland. Strickland requires the Virginia Supreme Court to analyze Vickers's claims under a two-prong test: competence and prejudice. To have granted relief, the Virginia Supreme Court would have to have found that (1) Vickers's lawyer's performance fell below the range of competence demanded of lawyers in criminal cases, Strickland, 466 U.S. at 690 (the "competence prong" of the test); and (2) there is a

reasonable probability that but for the deficient performance by counsel the ultimate result would have been different. Strickland, 466 U.S. at 694 (the "prejudice prong" of the test). Further, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

In Ground A Vickers asserts that he was denied effective assistance of counsel due to his trial attorney's handling of witnesses Samantha Kapp and Elizabeth Rouse. Vickers claims that his trial counsel failed to effectively cross-examine those central prosecution witnesses. The Virginia Supreme Court examined this allegation and reasonably determined, based upon the trial record, that Mr. Vickers's trial attorney made reasonable strategic decisions regarding his cross-examination of both Kapp and Rouse. There is no indication from the record that the Virginia Supreme Court's adjudication on the merits was contrary to, or involved an unreasonable application of, clearly established federal law, nor has their conclusion resulted in a decision that was based upon an unreasonable determination of the facts. Therefore, this Court recommends denial of Vickers's Ground A.

In Ground B Vickers asserts that he was denied effective assistance of counsel based upon his trial attorney's failure to subpoena several potential defense witnesses. Vickers claims that these witnesses, specifically Kathleen Kapp, Linda Pease, Heather Weidman, Kathy Hobbs, Beverly Cutchins, and Kelly Nichol, would have buttressed his claim of innocence. Vickers's trial counsel submitted an affidavit to the Virginia Supreme Court, in which he discussed his reasons for not having the above witnesses testify. In that affidavit trial counsel indicated that all of the witnesses named in Ground B were not called for one of the following reasons: they were found to be incredible; they could offer only inadmissible hearsay testimony; they would potentially open

the door to damaging character evidence; or, the evidence they could offer was available from other, more credible, sources. The Virginia Supreme Court examined the allegation that Vickers's trial attorney should have called the above-named witnesses, and determined that the trial attorney's failure to subpoena those witnesses fulfilled "neither the performance nor the prejudice prong of the two-part test enunciated in Strickland v. Washington," 466 U.S. 668, 687 (1984). There is no indication from the record that the Virginia Supreme Court's adjudication on the merits was contrary to, or involved an unreasonable application of, clearly established federal law, nor has their conclusion resulted in a decision that was based upon an unreasonable determination of the facts. Therefore, this Court recommends denial of Vickers's Ground B.

Vickers alleges, in Ground C, that he was denied effective assistance of counsel because his trial counsel failed to pursue a defense that Samantha Kapp, the mother of the victim, actually committed the murder. The Virginia Supreme Court determined, however, that the record, including trial counsel's affidavit, demonstrated that trial counsel did, in fact, present Vickers's defense that Samantha Kapp was the actual perpetrator. An examination of the trial transcript reveals that Vickers even testified that Kapp was the murderer. (Jan. 31 2002 Tr. 17, 35-36, 50.) There is no indication from the record that the Virginia Supreme Court's adjudication on the merits was contrary to, or involved an unreasonable application of, clearly established federal law, nor has their conclusion resulted in a decision that was based upon an unreasonable determination of the facts. Therefore, this Court recommends denial of Vickers's Ground C.

## 2. Counsel's Decision Not to Object

In Ground E Vickers claims that his counsel's failure to object to certain actions of alleged prosecutorial misconduct constituted reversible error. In an affidavit submitted to the Virginia Supreme Court, Vickers's trial attorney cited strategic reasons for not objecting to certain statements made by the prosecution during the trial. "[The trial attorney] believed that the prosecution fairly argued inferences ascertainable from the entire case, not isolated portions taken out of context." (Affidavit ¶ 26.) The trial attorney specifically cited concern that jurors would find objections vexatious and hold them against the defense as the reasons he did not object to statements cited as improper in Vickers's habeas petition. The Supreme Court has found that a counsel's decision to not object to a statement by the Commonwealth can be a tactical decision which the Court will not second-guess. Strickland, 466 U.S. at 689-91. The Virginia Supreme Court found that Ground E was a tactical decision made in good faith by Vickers's attorneys, which did not satisfy either the performance or prejudice prong of the Strickland test. (See Id.) There is no indication from the record that the Virginia Supreme Court's adjudication on the merits was contrary to, or involved an unreasonable application of, clearly established federal law, nor has their conclusion resulted in a decision that was based upon an unreasonable determination of the facts. Therefore, this Court recommends denial of Vickers's Ground E.

Upon a careful review of the record and Vickers's contentions that he received ineffective assistance of counsel, this Court finds that the Virginia Supreme Court did not apply Strickland unreasonably in finding that none of the petitioner's claims met either the performance or prejudice prong of the Stickland test. Therefore, this Court recommends denying Vickers relief on his claims of ineffective assistance of counsel, Grounds A, B, C, and E.

### 3. Ineffective Assistance of Appellate Counsel

Vickers asserts in Grounds F, K, and L that he was denied effective assistance of appellate counsel, due to his appellate counsel's failure to raise certain grounds upon appeal. However, counsel is not required to assert every conceivable issue on appeal. The Supreme Court has recognized that it is good strategy to identify and present only the strongest issues and arguments on appeal. Jones v. Barnes, 463 U.S. 745, 751-53 (1983).

In Ground F Vickers claims that his appellate counsel was ineffective for failing to raise issues regarding prosecutorial misconduct. This issue was unavailable to be raised on appeal, however, because it had been procedurally defaulted. The Supreme Court of Virginia has recently held that appellate counsel is not ineffective for failing to raise claims on appeal which were not preserved at trial. See Jerman v. Director of Dept. of Corrections, 267 Va. 432, 593 S.E.2d 255, 260 (2004). The Virginia Supreme Court reasonably held, based upon an examination of the record, that Vickers was not denied effective assistance of appellate counsel, based upon appellate counsel's decision to discard procedurally defaulted issues. The Virginia Supreme Court determined that this inaction by appellate counsel fulfilled neither the performance prong nor the prejudice prong of the Strickland test. There is no indication that the Virginia Supreme Court's adjudication of this issue was contrary to, or involved an unreasonable application of, clearly established federal law, nor has their conclusion resulted in a decision that was based upon an unreasonable determination of the facts. Therefore, this Court recommends denial of Vickers's Ground F.

In Ground K Vickers claims that his appellate counsel was ineffective for failing to argue that the Commonwealth unsuccessfully proved premeditation at trial. The Virginia Supreme Court

found that Vickers's appellate counsel's decision to abandon certain appellate claims was a strategic decision that should not be disturbed. "[A]ppellate counsel is given significant latitude to develop a strategy that may omit meritorious claims in order to avoid burying issues in a legal jungle." Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000). The Virginia Supreme Court determined that Vickers's appellate counsel's inaction satisfied neither the performance nor prejudice prong of the Strickland test. There is no indication that the Virginia Supreme Court's adjudication on this issue was contrary to, or involved an unreasonable application of, clearly established federal law, nor has their conclusion resulted in a decision that was based upon an unreasonable determination of the facts. Therefore, this Court recommends denial of Vickers's Ground K.

In Ground L Vickers advances that his appellate counsel was ineffective for failing to argue that the trial court abused its discretion in denying his motion to strike. The Virginia Supreme Court held that Vickers's appellate counsel engaged in strategic decision-making in omitting that line of argument. Appellate counsel does not render ineffective assistance by making strategic decisions to discard weaker claims on appeal. Jones, 463 U.S. 745. Thus, the Virginia Supreme Court reasonably held that this allegation fulfilled neither the cause nor prejudice prong of the Stickland test. There is no indication that the Virginia Supreme Court's adjudication on this issue was contrary to, or involved an unreasonable application of, clearly established federal law, nor has their conclusion resulted in a decision that was based upon an unreasonable determination of the facts. Therefore, this Court recommends denial of Vickers's Ground L.

In sum, none of the Grounds asserted in Vickers's habeas petition satisfy the Court that his appellate counsel's representation fell below the range of competence expected of other appellate

13

attorneys or that his actions otherwise prejudiced the petitioner in violation of Strickland v. Washington, 466 U.S. 668 (1984).

### 4. Insufficiency of the Evidence Claim

Vickers alleges in Ground I (2) that the evidence at trial was insufficient to prove he was the criminal agent in this case. When considering a sufficiency of the evidence claim, the Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements . . . beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This Court must resolve any conflicts in the evidence in favor of the prosecution. Id. at 323. The Court of Appeals of Virginia held that the evidence presented at trial, when taken in the light most favorable to the prosecution, was sufficient to convince a reasonable trier of fact that Vickers was guilty of capital murder. The Virginia Supreme Court upheld that finding. There is no indication that the Virginia Supreme Court's adjudication on this issue was contrary to, or involved an unreasonable application of, clearly established federal law, nor has their conclusion resulted in a decision that was based upon an unreasonable determination of the facts. Therefore, this Court recommends denial of Vickers's Ground L.

### III. RECOMMENDATION

For the foregoing reasons, the Court recommends that Vickers's petition for writ of habeas corpus be DENIED and the respondent's motion to dismiss be GRANTED.

Vickers's Grounds A, B, C, E, F, I (2), and K should be DENIED because they were previously adjudicated by the Virginia Supreme Court on the merits and the holding of Strickland,

14

and none of the statutory exceptions apply that would allow this Court to review these claims on the merits.

Vickers's Grounds D, G, H, I(1), and J should be DENIED because they were procedurally barred from review in the state courts, and thus may not now be considered in this federal Court.

Vickers's request for an evidentiary hearing [Doc. 14] is hereby DENIED.

Vickers's motion to strike memorandum in support of motion to dismiss [Doc. 12] is hereby DENIED.

Vickers has failed to demonstrate "a substantial showing of the denial of a constitutional right," therefore, it is recommended that the Court decline to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003).

## IV. **REVIEW PROCEDURE**

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

                                                                                 /s/
                                                                      Tommy E. Miller
                                                 UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

February 1, 2006

## **CLERK'S MAILING CERTIFICATE**

A copy of the foregoing Report and Recommendation was mailed this date to the following:

Eric Allen Vickers, #310165
Sussex II State Prison
24427 Musselwhite Drive
Waverly, VA 23891
PRO SE

Donald E. Jeffrey, III, Esq.

Office of the Attorney General

900 East Main Street

Richmond, VA 23219

                                                   Elizabeth H. Paret, Clerk

                              By _____
                                  Deputy Clerk

                                  February     , 2006